# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 05 2019, 9:41 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT
MOTHER

R. Patrick Magrath
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana

ATTORNEY FOR APPELLANT
FATHER

Jeremy L. Seal
Seymour, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of Parental Rights of:

B.H. & A.M. (Minor Children)
and
J.H. (Mother) & C.M. (Father),

*Appellants-Respondents,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

February 5, 2019

Court of Appeals Case No.
18A-JT-2336

Appeal from the Jackson Superior Court

The Honorable Bruce A. MacTavish

Trial Court Cause Nos.
36D02-1801-JT-1
36D02-1801-JT-2

**Baker, Judge.**

[1] J.H. (Mother) appeals the trial court's order terminating her parent-child relationship with her minor children, B.H. and A.M.; and C.M. (Father) appeals the order terminating his parent-child relationship with A.M. Mother and Father both argue that there is insufficient evidence supporting the termination order. Finding the evidence sufficient, we affirm.

## Facts

[2] B.H. was born to Mother and D.S. in August 2004.[1] A.M. was born to Mother and Father in January 2016.

[3] In December 2016, Mother, Father, and the children became homeless and were living in a hotel. The Department of Child Services (DCS) received a report alleging that the parents had failed to appropriately supervise the children because of active drug use, that they had engaged in domestic violence while caring for the children, and that the parents were failing to meet the children's medical needs. During the investigation, Mother and Father tested positive for methamphetamine and marijuana and reported that they were struggling to afford their hotel accommodations.

[4] On December 7, 2016, DCS removed the children from parents' care and custody and the next day, filed a petition alleging that the children were

---

[1] D.S. did not appeal the termination order.

children in need of services (CHINS). The children have been in foster care since that time. At the time of the termination hearing, they were in separate preadoptive placements.

[5] On January 11, 2017, Mother admitted that the children were CHINS based on the following facts:

> 6. Mother and [Father] have substance abuse issues that have a negative impact on the children.
>
> 7. Mother and [Father] do not have stable housing or a stable means to financially support the children.
>
> 8. There has been domestic violence within the home.

Tr. Ex. Vol. p. 35. Father entered a separate stipulation that was identical with respect to the admitted facts supporting the CHINS adjudication. *Id.* at 86. At the dispositional hearing, the trial court ordered parents to complete substance abuse assessments, submit to random drug screens, attend all scheduled visitations, and participate with home-based case management.

[6] Throughout the CHINS case, Father failed and often refused drug screens. He repeatedly tested positive for methamphetamine, amphetamine, and marijuana. He was incarcerated from March 16 to April 4, 2017, August 1 to 22, 2017, and again from September 21, 2017, to March 2, 2018; each of these incarcerations was related to drug use and possession. Less than a week after he was released on March 2, 2018, he tested positive for methamphetamine. Despite multiple referrals, he never completed a substance abuse assessment. Likewise, he never

participated consistently with home-based case management, with each referral terminated unsuccessfully. When not incarcerated, Father's visits with A.M. were inconsistent. He frequently failed to attend, and when he did attend, he was at times hostile and inappropriate and was threatening towards the visitation supervisor. On one occasion, he and Mother permitted A.M. to eat food off the floor of a public building; they refused to accept advice from the visitation supervisor because "we know what we are doing[.]" Tr. Vol. I p. 13.

[7] Mother also failed and often refused drug screens, repeatedly testing positive for methamphetamine and amphetamine. She also frequently failed to appear at drug screens. In the months leading up to the termination hearing, she tested positive for amphetamine and methamphetamine and then stopped participating with drug screens altogether. She failed to participate in a substance abuse assessment until after the termination petitions were filed. At that point, she completed the assessment but failed to engage in any services recommended by the assessment. She failed to participate with home-based case management until after the termination petitions were filed, when she attended four out of eight sessions and the service was closed unsuccessfully. Mother's visits were inconsistent throughout most of the CHINS case until the termination petitions were filed, when she began visiting consistently. Mother failed to attend any individual therapy sessions until after the termination petitions were filed. At that time, she attended sporadically, and the therapist was not able to provide therapeutic support regarding Mother's domestic violence issues.

On January 2, 2018, DCS filed petitions to terminate the parent-child relationship between Mother and both children and between Father and A.M. An evidentiary fact-finding hearing took place on May 2 and 30, 2018, and on August 28, 2018, the trial court issued termination orders granting DCS's petitions. The parents now separately appeal.[2]

# Discussion and Decision

Mother and Father each argue that the evidence does not support a conclusion that termination is in the children's best interests. Father also argues that the evidence does not support a conclusion that there is a reasonable probability that the conditions resulting in the children's removal will not be remedied.

# I. Standard of Review

Our standard of review with respect to termination of parental rights proceedings is well established. In considering whether termination was appropriate, we neither reweigh the evidence nor assess witness credibility. *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1229 (Ind. 2013). We will consider only the evidence and reasonable inferences that may be drawn therefrom in support of the judgment, giving due regard to the trial court's opportunity to judge witness credibility firsthand. *Id.* Where, as here, the trial court entered findings of fact and conclusions of law, we will not set aside the

---

[2] The parents' cases have been consolidated on appeal.

findings or judgment unless clearly erroneous. *Id.* In making that determination, we must consider whether the evidence clearly and convincingly supports the findings, and the findings clearly and convincingly support the judgment. *Id.* at 1229-30. It is "sufficient to show by clear and convincing evidence that the child's emotional and physical development are threatened by the respondent parent's custody." *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 148 (Ind. 2005).

[11] Indiana Code section 31-35-2-4(b)(2) requires that a petition to terminate parental rights for a CHINS must make the following allegations:

> (A)  that one (1) of the following is true:
>
> (i)  The child has been removed from the parent for at least six (6) months under a dispositional decree.
>
> (ii)  A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
>
> (iii)  The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B)    that one (1) of the following is true:

      (i)    There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

      (ii)    There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

      (iii)    The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C)    that termination is in the best interests of the child; and

(D)    that there is a satisfactory plan for the care and treatment of the child.

DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K.*, 989 N.E.2d at 1230.

## B.  Remedy of Conditions Resulting in Removal

[12]    Father first argues that DCS did not prove that there is a reasonable probability that the conditions resulting in A.M.'s removal will not be remedied.[3]  A.M.

---

[3] The trial court also found that there is a reasonable probability that the continuation of the parent-child relationship poses a threat to A.M.'s well-being.  As these statutory elements are phrased in the disjunctive and Father does not appeal this finding, we need not address his argument regarding the remedy of conditions resulting in removal.  Given the seriousness of a termination order, however, we will address his argument anyway.

was initially removed and continued to be removed from Father's care and custody based on concerns about drug use, instability, and domestic violence.

[13] Over the course of the CHINS case, Father was incarcerated at three separate times for offenses related to drug use and possession. He repeatedly failed to appear for drug screens and tested positive for methamphetamine and marijuana. He never completed a substance abuse assessment or participated successfully with home-based case management. His visits with A.M. were inconsistent and, when he did attend, were often fraught with hostility and poor parenting decisions.

[14] Father argues that his repeated incarcerations did not leave him with enough time to complete services. This argument is unavailing. Initially, we note that it was Father's choices that led to his incarcerations. Furthermore, even when Father was not incarcerated, he failed to participate with court ordered services and repeatedly tested positive for illicit substances. We find that this evidence supports the trial court's conclusion that there is a reasonable probability that the conditions resulting in A.M.'s removal will not be remedied.

## C. Best Interests

[15] Both parents argue that the evidence does not support the trial court's conclusion that termination was in the children's best interests. With respect to Father, as noted above, despite nearly one and one-half years to participate with services, work towards sobriety and stability, and improve his parenting skills, Father failed to make progress in any of these areas.

[16]   With respect to Mother, for most of the case, she, too, failed to make progress. She failed to report for drug screens and when she attended, repeatedly tested positive for methamphetamine. She failed to complete a substance abuse assessment and failed to participate consistently with home-based case management. DCS filed its termination petitions in January 2018, and it appeared in February 2018 as though Mother was finally ready to participate. She slowly began to make progress. But she attended only half of her home-based case management sessions, participated only sporadically with individual therapy, and relapsed in April 2018, mere weeks before the termination hearing took place. She did not participate in any drug screens in April or May 2018.

[17]   While we acknowledge that Mother had slowly begun to participate in services after the termination petitions were filed and had achieved certain markers of stability by the time of the hearing, the trial court was permitted to consider whether those recent efforts were outweighed by her patterns of conduct throughout the vast majority of the CHINS case.

[18]   Both children are thriving in their respective preadoptive placements. The Family Case Manager and the children's court appointed special advocate testified that they believed termination is in the best interests of both children. Thirteen-year-old B.H. wants to be adopted. Toddler A.M. has been with the same family for more than half of his life and has bonded with them.

[19]   Mother and Father had over a year to make progress, and they simply failed to do so in time. We find that the evidence in the record supports the trial court's

conclusion that termination of the parent-child relationship is in the children's best interests.

[20] The judgment of the trial court is affirmed.

May, J., and Tavitas, J., concur.